Louis J. HAMROS, Plaintiff,

v.

BETHANY HOMES AND METHODIST HOSPITAL OF CHICAGO, an Illinois not-for-profit corporation, and Barry Kurcz, Defendants.

No. 95 C 577.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 10, 1995.

David L. Lee, Chicago, IL, for plaintiff.

Camille Annette Olson, Kenneth David Schwartz, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Louis J. Hamros brings this seven count complaint against Bethany Homes and Methodist Hospital of Chicago (the "Hospital") and Barry Kurcz, alleging violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a), the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the Age Discrimination Act of 1967, and also alleging state law claims of retaliatory discharge, intentional infliction of emotional distress, interference with contract, and defamation. The court's jurisdiction is invoked pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(2), 28 U.S.C. §§ 1331 and 1343, as well as the doctrine of supplemental jurisdiction codified in 28 U.S.C. § 1367. Both the Hospital and Kurcz have brought motions to dismiss Counts IV, V and VI for failure to state a claim upon which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, the motions are granted in part and denied in part.

### *FACTS*

Plaintiff was hired by the Hospital on April 22, 1974, as a clerk/technician in radiology. He alleges that he was transferred to the pharmacy department in 1977, eventually becoming a pharmaceutical buyer. He further alleges that he established a good work record at the Hospital and received promotions, increased responsibilities, merit pay raises, and compliments on the quality of his work from his supervisors and fellow employees. He remained a full time employee of the Hospital until June 21, 1994, when he was fired.

On May 3, 1994, plaintiff requested medical leave under the Family and Medical Leave Act so that he could be hospitalized and receive electro-convulsive therapy for his clinical depression and treatment for spinal problems. Plaintiff alleges that the Hospital granted his medical leave, but rather than

give him the full twelve weeks required by the Act, Kurcz backdated his leave to March 21, 1994, and scheduled his return from leave for June 20, 1994. Plaintiff further alleges that while he was on medical leave, his wife asked Ron Slavin, the pharmacy director and plaintiff's supervisor, whether plaintiff should apply for disability. Slavin allegedly replied that he was having enough trouble with Human Resources over plaintiff. Plaintiff and his wife kept the Hospital informed of plaintiff's medical status while he was on leave. Each time they contacted the Hospital, they were told that the most important thing was for plaintiff was to get healthy. Plaintiff claims that neither he nor his wife were ever told that if plaintiff did not return from his leave by a specified date, he would be fired.

On July 5, 1994, plaintiff's doctor wrote a medical note releasing him to return to work on July 18, 1994. Plaintiff's wife delivered a copy of that note to the Hospital. On July 18, plaintiff was still recovering, so he planned to return to work the start of the following week. On July 21, plaintiff's wife was called at her job, and told to come in and pick up plaintiff's effects and COBRA papers because he had been fired one month earlier, on June 21, 1994.

As a result of his being terminated, plaintiff claims to have lost wages, employment benefits, and suffered embarrassment, humiliation, emotional distress, and severe psychological pain.

## STANDARD OF REVIEW

 A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When deciding a motion to dismiss, the court shall accept as true all the plaintiff's well pleaded factual allegations and otherwise liberally construe the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In addition, the court must give the plaintiff the benefit of every reasonable inference that may be drawn from the facts.

*Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

## DISCUSSION

### Count IV—Retaliatory Discharge

In Count IV of his amended complaint, plaintiff alleges that Illinois has a public policy that employees not be retaliated against for attempting to exercise their rights under the Family and Medical Leave Act ("FMLA"). Plaintiff further alleges that the public policy is expressed in the act itself, and that by firing him the Hospital retaliated against him for exercising his rights under the act.

The Hospital has moved to dismiss Count IV, arguing that because the FMLA does not enunciate clearly mandated Illinois public policy, and because plaintiff has an adequate remedy for the retaliation under the FMLA, the tort of retaliatory discharge should not be expanded to include plaintiff's claim.

 It is well settled that in Illinois an employee at will may be terminated at any time for any reason or none at all. *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982). Illinois recognizes a narrow exception to this employment at will doctrine, in those cases where an employee can demonstrate that he was terminated in retaliation for his actions, if the termination contravenes a clear mandate of public policy. *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). In *Palmateer,* 85 Ill.2d 124 at 130, 52 Ill.Dec. 13, 421 N.E.2d 876, the Illinois Supreme Court attempted to define clearly mandated public policy:

> There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions.

Plaintiff claims that there is a clear mandate of public policy as set forth in the FMLA. He has not provided, however, any case to support his claim that a tort of retal-

iatory discharge should extend to claims alleging termination for exercising rights granted by the FMLA. Accordingly, this court must predict how the Illinois Supreme Court would resolve this issue. Generally, that court has found a statute to express public policy only when its provisions impact the health and safety of its citizens in general. Thus, in *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), the court extended the tort to allow a discharged employee to sue for retaliatory discharge based on his refusal to engage in activities involving the mishandling of radioactive materials as provided in the federal Energy Reorganization Act. The court held that the hazards of radioactive material fall within the bounds of State public policy because of its impact on the health and safety of Illinois citizens in general. In contrast, in *Pratt v. Caterpillar Tractor Co.*, 149 Ill. App.3d 588, 102 Ill.Dec. 900, 500 N.E.2d 1001 (3d Dist.1986), the Illinois Appellate Court, following Illinois Supreme Court rationale, refused to extend the tort to a discharge allegedly based on an employee's refusal to engage in conduct in violation of the federal Foreign Corrupt Practices Act and the Export Administration Act. The court held that the employee's actions reflected a private concern between himself and his former employer and did not impact on the health and welfare of Illinois citizens in general.

■ In the instant case, plaintiff's reasons for exercising his rights under the FMLA were personal to him. As in *Pratt,* his complaint reflects a private concern between himself and his former employer. No member of the public will be affected by this dispute in any way. Accordingly, the court concludes that the Illinois Supreme Court would refuse to extend the tort of retaliatory discharge to cover plaintiff's claims.

This conclusion is consistent with the Illinois courts' hesitance to expand the scope of this tort. See, e.g., *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 206 Ill.Dec. 625, 629, 645 N.E.2d 877, 881 (1994) ("in [prior Illinois Supreme Court cases], this court expressed its disinclination to expand the tort of retaliatory discharge. Appellate court decisions similarly have followed a narrow interpretation of the cause of action").

Generally, the Illinois courts have refused to recognize retaliatory discharge claims unless recognition was necessary to further the goals expressed in *Kelsay*. That is, a retaliatory discharge claim would not be recognized unless there was no other remedy that would vindicate the public policy allegedly contravened. Historically, courts have recognized the claim where the otherwise available remedies would not serve as an effective deterrent to future employer misconduct. *Busa v. Barnes,* 646 F.Supp. 615 (N.D.Ill.1986); *Jarmoc v. Consolidated Electrical Distributors, Inc.,* 1992 WL 211511 (N.D.Ill.1992) (and cases cited therein).

In the instant case, the FMLA expressly prohibits retaliation, providing that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA further provides that it shall be unlawful for any employer to discharge, or in any other way or manner discriminate against any individual for opposing any practice made unlawful by the act. 29 U.S.C. § 2615(a)(2). Moreover, the FMLA provides an employee with a private right of action against an employer who has alleged to have violated the act, and the employee can recover not only lost wages, salary, benefits, and other actual monetary losses, but an additional amount as liquidated damages (i.e., double damages) designed as a punishment to deter the employer from future unlawful conduct. In light of these statutory remedies, the court concludes that the Illinois Supreme Court would not expand the common law tort of retaliatory discharge to include claims based on the exercise of rights under the FMLA. Accordingly, the court grants the Hospital's motion to dismiss Count IV.

### Count V—Intentional Infliction of Emotional Distress

In Count V plaintiff attempts to allege the tort of intentional infliction of emotional distress against both the Hospital and Kurcz. Specifically, plaintiff alleges that Kurcz, who

is a manager in the Hospital's human resources department, backdated plaintiff's application for family and medical leave, thereby depriving him of his full medical leave, with the intent to have plaintiff fired or disciplined. Plaintiff alleges that in so doing, Kurcz was acting upon motives that were personal to him rather than in the interest of the Hospital, and further alleges that Kurcz and the Hospital both knew that plaintiff was clinically depressed and was receiving professional help for that depression, and that their actions in backdating the application and ultimately firing plaintiff would inflict emotional distress. Both Kurcz and the Hospital have moved to dismiss this count for failure to state a claim.

■ Under Illinois law, the tort of intentional infliction of emotional distress contains the following elements:

 1. Extreme and outrageous conduct by the defendants;

 2. Intent to cause, or a reckless disregard of the probability of causing emotional distress;

 3. Severe or extreme emotional distress suffered by the plaintiff; and

 4. Actual and proximate causation of the emotional distress by defendants' outrageous conduct.

See *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). Illinois courts have consistently held that the conduct alleged must be particularly egregious. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle plaintiff to punitive damages for another tort. Liability has been found [only when the conduct] is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Id.* at 89–90, 4 Ill.Dec. 652, 360 N.E.2d 765.

■ In the instant case, the conduct alleged against the Hospital is simply that it terminated plaintiff's employment when he failed to return to work when his medical leave ran out. As defendant notes, in the employment context courts have held that Illinois law strictly demands a showing of "extreme and outrageous behavior":

 In employment situations, personality conflicts, job performance evaluations, or job transfers are unavoidable and often result in stress. However, if such stress formed the basis for the tort of intentional infliction of emotional distress, virtually every employee would have a cause of action.

*Miller v. Equitable Life Assurance Society*, 181 Ill.App.3d 954, 957, 130 Ill.Dec. 558, 560, 537 N.E.2d 887, 889 (1st Dist.1989) (and cases cited therein); see also, *Pratt v. Caterpillar Tractor Co.*, 149 Ill.App.3d 588, 591, 102 Ill.Dec. 900, 902, 500 N.E.2d 1001, 1003 (1986) (mere act of terminating employment of an at will employee is insufficient to constitute extreme and outrageous conduct).

With respect to Kurcz, plaintiff's allegations are slightly more detailed, but still fail to allege extreme and outrageous conduct. According to plaintiff, Kurcz backdated his leave application solely to cause him to be fired. While possibly tortious (as discussed below), this conduct does not amount to such extreme and outrageous behavior as to go beyond all possible means of decency.

Moreover, plaintiff's complaint fails to allege that he has suffered severe emotional distress as a result of the defendants' conduct, and the complaint fails to allege that the defendants intended to cause extreme emotional distress.

In response to defendants' motion, plaintiff states only that his complaint meets the notice pleading requirements of Fed.R.Civ.P. 8. Plaintiff is mistaken. Even under the liberal notice pleading standards of the Federal Rules, a complaint must nonetheless state a cause of action. To do so it must allege all the elements of the particular cause of action. *See Estate of Cassara v. State of Illinois*, 853 F.Supp. 273, 276 (N.D.Ill.1994) (complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory). Here, accepting all of plaintiff's allegations as true, he has failed to allege extreme and outrageous conduct by either defendant, and has failed to allege that he

has suffered severe emotional distress as a result of defendants' conduct. Accordingly, plaintiff's complaint fails to allege the elements of the tort of intentional infliction of emotional distress and, therefore, Count V is dismissed.

### Count VI—Interference with Contract

 In Count VI, plaintiff alleges that Kurcz intentionally interfered with his contract with the Hospital. To establish an action for tortious interference with contract under Illinois law, plaintiff must plead: (1) a valid and enforceable contract; (2) defendant's knowledge of the existence of a contract; (3) defendant's intentional and unjustified inducement of the breach of that contract; and (4) a breach of the contract caused by defendant's wrongful conduct resulting in damage to the plaintiff. *Tompulis v. Schwartz & Freeman,* 1993 WL 141792 * 3 (N.D.Ill.1993) (citing *George A. Fuller Co. v. Chicago College of Ost. Med.,* 719 F.2d 1326, 1330 (7th Cir.1983)).

Kurcz asserts that plaintiff's claim should be dismissed for failure to allege the existence of a valid and enforceable contract. While plaintiff has not specifically alleged the existence of a written contract, or even an oral contract, he does assert that he was employed by the Hospital, and Illinois courts have long recognized that causing the termination of even a contract terminable at will intentionally and without just cause is actionable. *Prudential Insurance Co. v. Van Matre,* 158 Ill.App.3d 298, 305, 110 Ill.Dec. 563, 567, 511 N.E.2d 740, 744 (5th Dist.1987).

Kurcz also argues that his status as a manager of the human resources department provides him with a privilege that shields him from liability for intentional interference with contract, because his actions were in accordance with his job or job duties. See *Fuller,* 719 F.2d at 1333; *Worrick v. Flora,* 133 Ill.App.2d 755, 758, 272 N.E.2d 708, 711 (1971). Plaintiff has alleged, however, that Kurcz was acting in his own interest, not the interests of the Hospital, when he backdated plaintiff's leave application, with the intent that plaintiff be terminated. A corporate officer or agent is privileged only if he acts in the best interests of the corpora-

tion. He is not privileged if he acts to further his own personal goals or to injure the other party to the contract, and his actions were contrary to the best interest of the corporation. *Fuller,* 719 F.2d at 1333. Plaintiff has stated a cause of action for intentional interference with contract against Kurcz. Accordingly, Kurcz's motion to dismiss Count VI is denied.

### CONCLUSION

For the reasons set forth above, the Hospital's motion to dismiss Count IV is granted, the Hospital and Kurcz's motion to dismiss Count V is granted, and Kurcz's motion to dismiss Count VI is denied.