# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4099MN

_____

| | | |
|---|---|---|
| United States of America | * | |
| ex rel. James Zissler, and | * | |
| United States of America, | * | |
| | * | |
| Appellants, | * | On Appeal from the United |
| | * | States District Court |
| v. | * | for the District of |
| | * | Minnesota. |
| Regents of the University | * | |
| of Minnesota, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 10, 1998

Filed: September 4, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit Judges,
    and PANNER,[1] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.


    James Zissler brought this suit against the University of Minnesota on behalf of
the United States as a <u>qui tam</u> relator under the False Claims Act, 31 U.S.C. §§ 3729 -

_____

    [1]The Hon. Owen M. Panner, United States District Judge for the District of
Oregon, sitting by designation.

3733 (1994). The suit alleged misuse of federal grant money in violation of the Act. The United States intervened. The District Court dismissed the False Claims Act counts of Zissler's and the government's complaints, holding that States, and hence the University,[2] were not "persons" subject to liability under that law. This interlocutory appeal under 28 U.S.C. § 1292(b) followed. We reverse.

## I.

Between 1969 and 1993, the University of Minnesota received approximately $19 million from the National Institutes of Health for research on organ transplantation. In 1995, Zissler sued the Regents of the University of Minnesota for violating the False Claims Act, as a qui tam relator.[3] The United States intervened in 1996, claiming that the University had made false and incomplete statements in administering the research grant, "including false statements regarding program income, patents, human subject protections, investigator credentials, and descriptions of the research." Appellant's App. at 53. It alleged presentation of false claims in violation of 31 U.S.C. § 3729(a)(1), and making, using or causing to be made or used a false record or statement for payment, in violation of 31 U.S.C. § 3729(a)(2), and concealing, avoiding, or decreasing an obligation to the government, in violation of 31 U.S.C. § 3729(a)(7). It also brought claims of unjust enrichment, payment by mistake, disgorgement of profits, and breach of fiduciary duties. Whether any of these allegations can be proved remains to be seen.

The University moved to dismiss both the government's and Zissler's suits. The District Court granted the motions as to the False Claims Act claims because, it held,

---

[2]We agree with the University that it is an instrumentality of the State and is entitled to whatever immunities or defenses the State would have if sued in its own name.

[3]Zissler also brought other claims, which were later voluntarily dismissed.

the language and history of the Act did not clearly indicate that it applies to States.  The Court allowed the government to proceed with its other claims.

The sole issue on appeal is whether States are subject to the False Claims Act. Section 3729(a)  imposes liability on "[a]ny person" who makes false statements or claims to the United States government, without further definition of the term "person." We hold that States are "persons" within the liability provision of the Act.

## II.  Constitutional Balance of Federal and State Powers

The University argues that, to subject States to liability under the False Claims Act, Congress must have clearly stated its intent to do so in the language of the statute.  The Supreme Court has held that "if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.' " Will v. Michigan Dep't of State Police, 491 U.S. 58, 65 (1989) (citations omitted).  We thus examine whether suit by a qui tam relator, in which the United States has intervened, effects such an alteration.

We first hold that, in an action under the False Claims Act, the United States is the real party in interest because of its significant control over the course of the litigation and its dominant share of the proceeds thereof.  The qui tam provisions of the Act state: "Actions by Private Persons -- (1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of the Government . . .." 31 U.S.C. § 3730(b).  The action may be dismissed only with the consent of the Attorney General, and the government may intervene in the action.  Id.  If the government intervenes, as it has in this case, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1).  Section 3730(c)(2)(A) and (B) give the government considerable control over the

dismissal and settling of the case, as well as the participation of the relator in it. Further, the government receives the lion's share of any recovery: where it has intervened, between 75% and 85% of the proceeds of the claim. 31 U.S.C. § 3730(d).

Even in cases where the United States has declined to intervene, "the structure of the qui tam procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation" have been held to "weigh heavily" for holding that it remains the real party in interest. United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr., 961 F.2d 46, 49 (4th Cir. 1992). See also Searcy v. Phillips Electronics N. America Corp., 117 F.3d 154 (5th Cir. 1997); United States ex rel. Hall v. Tribal Dev. Corp., 49 F.3d 1208, 1212 (7th Cir. 1995); United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715 (9th Cir. 1994); Minotti v. Lensink, 895 F.2d 100 (2d Cir. 1990); United States ex rel. Long v. SCS Business & Technical Inst., 999 F. Supp. 78 (D.D.C. 1998). In this structure, the relator "has no interest in the matter whatever except as [a common informer]." Marvin v. Trout, 199 U.S. 212, 225 (1905) (explaining that qui tam actions "have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government"). Especially where the government has intervened, then, it must be recognized as the real party in interest. The relator is "essentially a self-appointed private attorney general," United States ex rel. Milam, 961 F.2d at 49, whose involvement in a representational capacity does not raise Eleventh Amendment concerns. In fact, this Court holds, in an opinion filed today, that a State has no Eleventh Amendment immunity against a qui tam suit filed under this statute, even when the United States has chosen not to intervene. United States ex rel. Rodgers v. Arkansas, No. 97-1940EA.

As the real party in interest, the federal government's power to sue a State is well within the usual constitutional balance of federal and state powers. The consent of the States to suit by the United States is "inherent in the [plan of the constitutional]

-4-

convention," <u>Blatchford v. Native Village of Noatak</u>, 501 U.S. 775, 785 (1991), and "nothing in [the Eleventh Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States." <u>United States v. Mississippi</u>, 380 U.S. 128, 140 (1965). Contrary to the University's assertion, the Supreme Court's decision in <u>Seminole Tribe v. Florida</u>, 517 U.S. 44 (1996), does not put this principle in question. <u>Seminole Tribe</u> addressed the question of whether Congress could authorize an Indian tribe, a private party, to sue a State. It explicitly distinguished, however, the power of the federal government to do so. <u>Id.</u> at 71 n.14 ("[T]he Federal Government can bring suit in federal court against a State, see, <u>e.g.</u>, <u>United States v. Texas</u>, 143 U.S. 621, 644-45 (1892) (finding such power necessary to the 'permanence of the Union')."). As the Fourth Circuit has explained, <u>Seminole Tribe</u> does not change our analysis that "the States have no Eleventh Amendment immunity against the United States <u>ab initio</u>. Therefore, there is no reason Congress would have displaced it in the False Claims Act." <u>United States ex rel. Berge v. Board of Trustees of the University of Alabama</u>, 104 F.3d 1453 (4th Cir. 1997) (quoting <u>United States ex rel. Milam</u>, 961 F.2d at 50 n.3).

Nor does application of the False Claims Act to States constitute coercion, thereby disrupting the usual balance of power between the United States and the States. There is no coercion in subjecting States to the same conditions for federal funding as other grantees: States may avoid these requirements simply by declining to apply for and to accept these funds. But if they take the King's shilling, they take it <u>cum onere</u>. In a case considering the application of the Hatch Act to the political activities of federally funded State employees, the Supreme Court found no violation of state sovereignty, because the State could follow "the 'simple expedient' of not yielding to what she urges is federal coercion. . . . The offer of benefits to a state by the United States dependent upon cooperation by the state with federal plans, assumedly for the general welfare, is not unusual." <u>Oklahoma v. Civil Service Comm'n</u>, 330 U.S. 127, 143-44 (1947). Here, the only cooperation asked of States is honesty, a mild requirement in light of the fact that the Tenth Amendment allows even "the indirect

achievement of objectives which Congress is not empowered to achieve directly," through conditional federal funding.  South Dakota v. Dole, 483 U.S. 203, 210 (1987) (upholding the conditioning of federal highway funding on State enforcement of a certain minimum drinking age).  Accordingly, we reject the University's suggestion that the False Claims Act's remedies impermissibly "commandeer the legislative processes of the States."  New York v. United States, 505 U.S. 144, 161 (1992) (citation omitted).  Further, the University should not have needed explicit notice of the basic understanding that the grants were to be obtained and administered without fraud.

The University argues that the False Claims Act's remedies alter the usual constitutional balance of federalism because they are extracompensatory.  Though the ability of private citizens to recover more than compensatory damages from state defendants has been limited in some instances -- see, e.g., Employees of Dep't of Public Health and Welfare v. Dep't of Public Health and Welfare, 411 U.S. 279 (1973),  we do not understand the federal government to be so restricted.  In any case, "the Supreme Court has determined that 'the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages . . . .' . . .  We do not see how the treble-damages provision of the False Claims Act is different . . . and we hold that the [False Claims Act] civil case was compensatory rather than punitive."  United States v. Brekke, 97 F.3d 1043, 1048 (8th Cir. 1996) (citations omitted) (holding that a False Claims Act suit did not bar subsequent criminal prosecution), cert. denied, 117 S. Ct. 1281 (1997).

We hold that a False Claims Act action against a State falls within "the usual constitutional balance between the States and the Federal Government."  Will, 491 U.S. at 65 (citations omitted).  Therefore, Congress's intent to include States as liable parties need not be manifest in "unmistakably clear" language.  Id.

## III. Statutory Analysis

We proceed to interpret the statute under the ordinary canons of statutory construction. The University first argues that we should presume the Act to exclude States because they are sovereigns. By it own terms, however, the presumption of sovereign exclusion applies only to "the enacting sovereign," in this case the United States. United States v. California, 297 U.S. 175, 186 (1936) ("[A] sovereign is presumptively not intended to be bound by its own statute unless named in it."). Moreover, this canon is invoked only when the statute's purpose is in doubt. Id. In this case, however, we believe that "[t]he purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute . . . indicate an intent, by the use of the term, to bring state or nation within the scope of the law." United States v. Cooper Corp., 312 U.S. 600, 605 (1941) (considering whether the United States was a "person" within the meaning of the Sherman Anti-Trust Act). Accord, Will, 491 U.S. at 74.

The purpose of the original False Claims Act, enacted in 1863, was broad: "the Act was intended to reach all types of fraud, without qualification, that might result in a financial loss to the Government." United States v. Neifert-White Co., 390 U.S. 229, 232 (1968). Moreover, the purpose of substantial amendments in 1986 was further "to enhance the Government's ability to recover losses sustained as a result of fraud against the Government" and "to make the statute a more useful tool against fraud in modern times." S. Rep. No. 99-345, at 1, reprinted in 1986 U.S.C.C.A.N 5266. In "modern times," States have received a significant and increasing amount of federal funding: federal grants to state and local governments more than doubled from $108 billion in 1987 to $228 billion in 1996. Bureau of the Census, U.S. Department of Commerce, Publication FES/96, Federal Expenditures by State for Fiscal Year 1996 at 46, Table 11 (1997). In this context, "[w]e can perceive no reason . . . to exempt a business carried on by a state from the otherwise applicable provisions of an act of Congress, all-embracing in scope and national in its purpose, which is as capable of

being obstructed by state as by individual action." United States v. California, 297 U.S. at 186 (holding the Federal Safety Appliance Act to apply to a state-run railroad). See also New York v. United States, 505 U.S. at 167 (noting that federal funding to States is "not unusual today").

The legislative history of the False Claims Act as amended in 1986 supports the inclusion of States as liable "persons." In a section entitled "History of the False Claims Act and Court Interpretation," the Senate report accompanying the 1986 amendments stated that "[t]he False Claims Act reaches all parties who may submit false claims. The term 'person' is used in its broadest sense to include partnerships, associations, and corporations . . . as well as States and political subdivisions thereof." S. Rep. No. 99-345, at 8 (citations omitted). The University asserts that this statement should be given little weight, because it was not the view of the enacting 1863 Congress, and "had no substantive relationship to the then-pending amendments." Appellees' Br. at 42. We disagree. Before the 1986 amendments, Section 3729(a), the provision defining liability, began: "A person not a member of an armed force of the United States is liable to the United States government . . . if the person -- . . .." It now reads, "Any person who -- . . .." The change evidenced consideration of whom to hold liable under the strengthened Act, to which that Congress's understanding (whether right or wrong) of court interpretations of "person" was relevant background. Notwithstanding the University's challenge of its legitimacy, this understanding was that the False Claims Act applied to the States, and would, after the 1986 amendments, continue to apply to the States.

Interpreting Section 3729's "person" to include States is consistent with the use of "person" in other provisions of the False Claims Act. "[T]he normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning." Commissioner v. Lundy, 516 U.S. 235, 250 (1996) (citations omitted). Section 3730, "Civil actions for false claims," authorizes "private persons" to enforce the Act. States have acted as qui tam plaintiffs under this

-8-

provision.  See, e.g., United States ex rel. Woodard and Colorado v. Country View Care Ctr., 797 F.2d 888 (10th Cir. 1986); United States ex rel. Wisconsin v. Dean, 729 F.2d 1100 (7th Cir. 1984).  In the absence of language to the contrary, they should also be "persons" when sued as defendants.  Further, Section 3733 of the Act, "Civil investigative demands," expressly includes States in its definition of "person."  31 U.S.C. § 3733(l)(4).  We acknowledge the University's point that the definition of "person" in Section 3733 is said to be "for purposes of this section."  This argument is a good one, but we do not consider it strong enough to carry the day in the context of all the other considerations we are discussing in this opinion.

The University contends that the treatment of States in the Program Fraud Civil Recoveries Act (PFCRA) indicates legislative intent to exclude States from liable "persons."   The PFCRA, 31 U.S.C. §§ 3801 - 3812 (1994), is the administrative counterpart to the False Claims Act.  It expressly omits States from its list of liable "persons."  31 U.S.C. § 3801(a)(6).  "Where Congress uses the same form of statutory language in different statutes having the same general purpose, courts presume that Congress intended the same interpretation to apply in both instances."  Imazio Nursery, Inc. v. Dania Greenhouses, 69 F.3d 1560, 1568 (Fed. Cir. 1995).  However, in this case, the presumption is outweighed by the stronger evidence, in the False Claims Act itself, that Congress intended "persons" to include States.

"[A] section of a statute should not be read in isolation from the context of the whole Act, and . . . in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.' "  State Highway Comm'n  v. Volpe, 479 F.2d 1099, 1111-12 (8th Cir. 1973) (citations omitted).  We believe that interpreting  "person" in 33 U.S.C. § 3729 to include States as liable parties fulfills these objectives.

IV.

We reverse the order of the District Court and remand the case for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.