Randolph PHILLIPS, Plaintiff-Appellee,

v.

John E. TOBIN et al.,
Defendants-Appellants,

Ralph K. Gottshall et al., Defendants,

and

Alleghany Corporation,
Defendant-Appellant.

Nos. 888, 889, 890, 891, Dockets 75–7677,
75–7681, 76–7044, 76–7045.

United States Court of Appeals,
Second Circuit.

Argued July 22, 1976.

Decided Dec. 16, 1976.

William E. Hegarty, New York City (Cahill Gordon & Reindel, Richard Schumacher and John A. Shutkin, New York City, of counsel), for defendant-appellant Alleghany Corp.

Robert J. Geniesse, New York City (Debevoise, Plimpton, Lyons & Gates, Samuel E. Gates, New York City, of counsel), for defendants-appellants John E. Tobin, Fred M. Kirby, Allan P. Kirby, Jr. and John J. Burns, Jr.

Randolph Phillips, pro se.

Before WATERMAN and MESKILL, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

This is an appeal by the defendants Alleghany Corporation ("Alleghany") and individual directors thereof pursuant to 28 U.S.C. § 1291 from an order of the United States District Court for the Southern District of New York (Ward, J.) denying defendants' motion to dismiss the plaintiff's *pro se* complaint upon the ground of plaintiff's disqualification. The complaint alleges a derivative action on behalf of defendant Alleghany and a representative action on behalf of plaintiff and others similarly situated, and after dismissal by the lower court of counts 2, 4, 5 and 6 and portions of counts 1 and 7, the remaining counts alleged violations by the directors of Alleghany of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a *et seq.*) (proxy and fraud claim, S.E.C. Rules 10b–5 (17 C.F.R. § 240.-10b–5) and 14a–9 (17 C.F.R. § 240.14a–9)), and the state claim arising from the Jones Motor Company transaction. The complaint seeks various forms of injunctive relief against Alleghany, the divestiture by Alleghany of the Jones Motor Company acquisition, registration under the Investment Company Act of 1940, and declaration and distribution of dividends not heretofore paid out, in excess of $80 million,[1] as well as payment by the directors of Alleghany of damages estimated at $18 million.

Both Alleghany and the individual defendants predicate their appeal upon the disqualification of plaintiff to bring this suit on two grounds: (1) plaintiff, not being an attorney, has no right to prosecute a derivative action on behalf of Alleghany *pro se,* and (2) plaintiff is not an adequate representative plaintiff under the requirements of Federal Rule of Civil Procedure 23.1. The former relates to who may serve as counsel and the latter relates to who may serve as a derivative stockholder representative. Phillips has moved to dismiss the appeal on various grounds, among them that the order appealed from is not final.

*Appealability*

While an order granting or denying disqualification of an attorney to appear in an action has not always been appealable, we have since 1974 held under 28 U.S.C. § 1291 such an order appealable. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) (*en banc*). See also *J. P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1359 (2d Cir. 1975); *Hull v. Celanese Corp.,* 513 F.2d 568, 570–71 (2d Cir. 1975); *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir. 1975); *General Motors Corp. v. City of New York,* 501 F.2d 639, 644 (2d Cir. 1974). Nevertheless, appellee denies that this Court has appellate jurisdiction relying on *Willheim v. Murchison,* 312 F.2d 399 (2d Cir. 1963), holding non-appealable a district court's order denying disqualification of this very plaintiff who brought a stockholder's derivative action *pro se.* But *Willheim* as well as the predecessor authorities upon which it relied were expressly overruled in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra.* There the court accepted an appeal from an order of the district court denying disqualification of the plaintiff's attorney formerly associated with the defendant's law firm. In upholding the appealability of the order the *en banc* court relied upon the doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), noting that if the final disposition of a collateral right not an in-

---

* Of the Eastern District of New York, sitting by designation.

1. Plaintiff failed to observe the distinction between a derivative stockholder's action to enforce the right of the corporation (Rule 23.1) and what is in substance a class action to enforce the personal right of the stockholders against the corporation to force declaration of dividends (Rule 23). *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 736 (3d Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); *Sweet v. Bermingham,* 65 F.R.D. 551 (S.D.N.Y.1975); *Weiner v. Winters,* 50 F.R.D. 306, 309 (S.D.N.Y.1970). Such a misjoinder of causes of action is subject to a motion for a severance under Rules 21 & 42(b).

gredient of the cause of action remained unresolved before trial, judicial and attorney time might be needlessly expended. Accordingly, the order denying disqualification on the first ground is appealable, and thus we deny the motion to dismiss the appeal.

■ Although an order denying a plaintiff-stockholder the right to proceed with a derivative suit on the ground of inadequacy of representation would probably be a final order and appealable, see *Nolen v. Shaw-Walker Co.*, 449 F.2d 506 (6th Cir. 1971); *Quirke v. St. Louis-San Francisco Ry.*, 277 F.2d 705, 706 (8th Cir.), *cert. denied*, 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1960), we can find no precedent for the appealability of the converse order which permits such a plaintiff to proceed with the action by denying disqualification upon the same ground. Such an order not being a final judgment under 28 U.S.C. § 1291, we do not believe it falls within the narrow bounds of the collateral right doctrine of *Cohen, supra,* entitling this order to the extraordinary treatment of appealability there authorized, nor do we find that the order comes within the doctrine of equality of treatment between plaintiffs and defendants as postulated in *Korn v. Franchard Corp.*, 443 F.2d 1301, 1307 (2d Cir. 1971) (Friendly, *J.,* concurring); *Parkinson v. April Industries, Inc.*, 520 F.2d 650, 656 n. 6 (2d Cir. 1975); *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1007 n. 1 (2d Cir. 1973), *vacated and remanded,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), nor that the lower court's determination will cause " 'irreparable harm to a defendant in terms of time and money spent in defending' " this action. *Kohn v. Royall, Koegel & Wells,* 496 F.2d 1094, 1098 (2d Cir. 1974). See also *General Motors Corp. v. City of New York, supra,* 501 F.2d at 644. Due to the factual variations present in the determination of adequacy of representation, there is no reason to believe that this deci-

sion would establish a legal principle once and for all as is true of *Cohen, supra.* See *Donlon Industries, Inc. v. Forte,* 402 F.2d 935, 937 (2d Cir. 1968). In fact, such an adjudication would, as stated by Judge Friendly in *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.,* 455 F.2d 770, 773 (2d Cir. 1972), "open the way for a flood of appeals concerning the propriety of a district court's ruling on the facts of a particular suit." We conclude that this order is not significant enough to warrant a finding that it is final, nor to permit an immediate review even though it may not be effectively reviewable on appeal from the final judgment.[2] *Id.* at 774; *West v. Zurhorst,* 425 F.2d 919 (2d Cir. 1970); *Donlon Industries, Inc. v. Forte, supra; Flegenheimer v. General Mills, Inc.,* 191 F.2d 237 (2d Cir. 1951). Thus, Judge Ward's refusal to disqualify Phillips as a proper class representative is not appealable, and hence we do not reach the merits.

This does not mean that the appellants are wholly without a remedy. The district court has determined that plaintiff at present is an adequate representative to institute the action and to set in motion the machinery of equity. If during the trial the district court finds this is no longer true it is within the court's power to take such action as it may deem necessary to permit other shareholders who satisfy the adequacy requirements to continue the suit. The option may be exercised by authorizing such notice to other shareholders as may be advisable and prudent under the circumstances. See Advisory Committee's Note to Rule 23.1, 39 F.R.D. 108 (1966); Note, *Res Judicata in the Derivative Action: Adequacy of Representation and the Inadequate Plaintiff,* 71 Mich.L.Rev. 1042, 1051 (1973). *Cf. Papilsky v. Berndt,* 466 F.2d 251, 256–60 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *Beaver Associates v. Cannon,* 59 F.R.D. 508 (S.D.N.Y. 1973).

---

**2.** In a subsequent identical suit by another shareholder, however, inadequacy of representation may defeat the defense of res judicata of the prior judgment. *Cf. Hansberry v. Lee,* 311

U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592 n. 15 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

*Merits*

Having established appellate jurisdiction to review the denial of the motion to dismiss upon the first ground, we turn to the merits of the question as to whether the plaintiff should be disqualified to bring this suit in his *pro se* capacity. At the threshold, we recognize the long established principle that in the federal courts the parties have the right to plead and conduct their own cases, *Faretta v. California*, 422 U.S. 806, 830 n. 39, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and in the criminal context a defendant has a constitutional right to represent himself under the Sixth and Fourteenth Amendments.[3] *Id.* Section 1654 of Title 28 of the United States Code expressly provides:

> "In all courts of the United States the parties may plead and conduct *their own cases* personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." (Emphasis added).[4]

The basic question raised by the above statute is whether this stockholder's derivative suit is the plaintiff's "own case" or is a suit belonging to the corporation. Courts have repeatedly held that the substantive right in a stockholder's derivative suit is that of the corporation, *Ross v. Bernhard*, 396 U.S. 531, 538–39, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522–23, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975); *Papilsky v. Berndt, supra*, 466 F.2d at 255–56, and not that of the stockholders.

In fact, it has long been settled that the derivative suit was an invention of the courts of equity which "came to the relief of the stockholder, who had no standing to bring civil action at law against faithless directors and managers. Equity, however, allowed him to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own." *Cohen, supra*, 337 U.S. at 548, 69 S.Ct. at 1226. *See also Ross v. Bernhard, supra.* Consequently, it was a mere procedural device to enforce the corporate claim. Since a corporation may not appear except through an attorney, likewise the representative shareholder cannot appear without an attorney. "Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally. With regard to these two types of business associations, the long standing and consistent court interpretation of § 1654 is that they must be represented by licensed counsel." *Turner v. American Bar Ass'n*, 407 F.Supp. 451, 476 (N.D.Tex.1975). *See Jackson v. Statler Foundation*, 496 F.2d 623, 626 (2d Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Algonac Mfg. Co. v. United States*, 458 F.2d 1373, 1375, 198 Ct.Cl. 258 (1972); *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426 (2d Cir. 1967); *Brandstein v. White Lamps, Inc.*, 20 F.Supp. 369, 370–71 (S.D.N.Y.1937).

To meet the requirement of an attorney's representation plaintiff claims that in fact he is "a person learned in the law," and accordingly is a lawyer as that term is defined in Black's Law Dictionary.[5] He

---

**3.** There is no similar constitutional right of a layman to represent others. *Guajardo v. Luna*, 432 F.2d 1324, 1325 (5th Cir. 1970). *See Turner v. American Bar Ass'n*, 407 F.Supp. 451, 475–77 (N.D.Tex.1975).

**4.** The plaintiff relies on Judge Dawson's opinion in *Willheim v. Murchison*, 206 F.Supp. 733 (S.D.N.Y.1962), *appeal dismissed*, 312 F.2d 399 (2d Cir. 1963), in which the court declared that a stockholder's derivative action is for all purposes of 28 U.S.C. § 1654 the action of the nominal shareholder party plaintiff, reasoning that if a representative action is not to be regarded as the action of the plaintiff then § 1654 would "not even cover appearances by

counsel in such actions." *Id.* at 736. We believe that this conclusion is a non sequitur. The fact that the plaintiff is permitted by the intervention of equity to bring a suit on behalf of the corporation, which in fact is the corporation's claim, does not mean that if denied the right to bring such an action in his own behalf the plaintiff cannot appear by an attorney on behalf of the corporation. *But cf. Brooks v. Saxony Tobacco & Sales Corp.*, 20 Misc.2d 401, 188 N.Y.S.2d 384 (S.Ct. Westchester Co. 1959).

**5.** Black's Law Dictionary 1033 (Rev. 4th ed. 1968) defines "lawyer" as follows: "A person learned in the law; as an attorney, counsel, or solicitor; a person licensed to practice law."

predicates this claim on his assertion that he has won $613,000 in legal fees and damages by defeating many luminaries at the bar. We need not tarry too long on the merits of this assertion because it is not relevant. The necessity for an attorney in a stockholder's derivative suit appears from the fact that it is a special type of proceeding. Unlike a personal suit, failure of the plaintiff to succeed in the action will result in a loss to the corporation because under the laws of many states, including the law of Maryland where Alleghany was incorporated, a corporation is obligated to indemnify the individual director defendants for their fees and expenses if the suit fails.[6] This could mean a substantial loss to the corporation and could result in a decrease in the corporate assets and the value of the shares. Likewise, any recovery will run directly to the corporation and not to the plaintiff.

In spite of his protest to the contrary, plaintiff, being a layman, cannot provide Alleghany with the competent legal representation which a case of this nature would warrant, nor is Alleghany adequately protected against the plaintiff's failure to comply with the disciplines required of an attorney as an officer of the court. "He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the State to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent." *Cohen, supra,* 337 U.S. at 549–50, 69 S.Ct. at 1227. In *Saylor v. Lindsley,* 456 F.2d 896, 900 (2d Cir. 1972), we pointed out that the interest of the plaintiff in a stockholder's derivative suit is not necessarily the same as the interest of his attorney in the suit. Although both may be interested in maximum recovery against the directors, the stockholders' share in the financial recovery may be much less than the fees awarded to counsel. *See Kramer v.*

*Scientific Control Corp.,* 534 F.2d 1085 (3d Cir.), *petition for cert. filed,* 44 U.S.L.W. 3739 (U.S. June 10, 1976), to the effect that an attorney cannot act as both class counsel and class representative. *Cf. Stull v. Pool,* 63 F.R.D. 702 (S.D.N.Y.1974).

Enunciating the same principle in a similar context is *United States v. Onan,* 190 F.2d 1 (8th Cir.), *cert. denied,* 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654 (1951). There two individual laymen brought suit *pro se,* pursuant to 31 U.S.C. §§ 231 & 232, on behalf of and in the name of the United States against several individual and corporate defendants to recover for alleged false claims presented for payment to the United States. The plaintiffs sought for themselves an award out of the judgment or any settlement as provided by statute. The lower court denied the plaintiffs' motion under 28 U.S.C. § 144 that the judge disqualify himself based upon their affidavit of prejudice. The court of appeals was required to determine whether the lower court's denial of the plaintiffs' motion of disqualification was justified. Finding no impropriety in the judge's actions, and disqualifying the *pro se* plaintiffs, the court stated:

> "They are laymen, and while Section 232, Title 31, United States Code Annotated, provides that such suit 'may be brought and carried on by any person,' we do not think that Congress could have intended to authorize a layman to carry on such suit as attorney for the United States but must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself. . . . The practice of law is affected with a public interest and an attorney at law as distinguished from a layman, has both public and private obligations, being sworn to act with all good fidelity toward both his client and the court. Counsel of record, as the term is used in Section 144, Title

---

**6.** Md. Corp. & Ass'ns Code Ann. §§ 2–418(c) & (d) (Supp.1976) provide for indemnification of directors against expenses incurred in a successful defense.

28, United States Code, has an obligation which he owes to the court as well as to his client, and he owes a public duty to aid the administration of justice, to uphold the dignity of the court and respect its authority." *Id.* at 6–7.

In an analogous case the Fourth Circuit in refusing to allow a prisoner to bring a class action on behalf of fellow inmates wrote:

> "Ability to protect the interests of the class depends in part on the quality of counsel, *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), and we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others. *Cf. Anderson v. Moorer*, 372 F.2d 747, 751 n. 5 (5th Cir. 1967). Neither Oxendine nor any other prisoner has assigned error to the class aspect of this case, but it is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action." *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).

*See McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966).

These decisions are not made for the benefit of the organized bar, but as indicated in *Niklaus v. Abel Constr. Co.*, 164 Neb. 842, 83 N.W.2d 904, 911 (1957), where the court prohibited a layman from bringing a tax-payer's suit *pro se* on behalf of a municipal corporation, the decisions are rendered to protect citizens and litigants against " 'the mistakes of the ignorant on the one hand, and the machinations of unscrupulous persons on the other.' " *See Otto v. Patterson*, 173 Ohio St. 174, 180 N.E.2d 575 (1962).

This suit will involve large scale litigation and the result will be res judicata barring any other litigation on behalf of the corporation. *Armstrong v. Frostie Co.*, 453 F.2d 914, 917 (4th Cir. 1971); *Smith v. Alleghany Corp.*, 394 F.2d 381, 391 (2d Cir.), *cert. denied*, 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968); *Rosenfeld v. Black*, 336 F.Supp. 84, 92 (S.D.N.Y.1972); *Breswick & Co. v. Briggs*, 135 F.Supp. 397, 404 (S.D.N.Y.1955); *Liken v. Shaffer*, 64 F.Supp. 432 (N.D.Iowa 1946); *Ratner v. Paramount Pictures, Inc.*, 6 F.R.D. 618 (S.D.N.Y.1942); 3B Moore's Federal Practice ¶ 23.1.16[3] at 173–74 (Supp.1975). Consequently, the person prosecuting the suit must be subject to the standards of ability, responsibility, liability and accountability required of members of the bar, as officers of the court and by the Code of Professional Responsibility. This plaintiff, under the cloak of a *pro se* applicant, has engaged in conduct in the past which has evoked judicial rebuke and reprimand and has demonstrated his complete disregard of the standards, propriety, discipline or accountability required of members of the bar.[7] We can find no reason or

---

7. Alleghany's affairs "have given rise to a flood of litigation that must be unparalleled in American corporation law," *Willheim v. Murchison*, 342 F.2d 33, 35 (2d Cir.), *cert. denied*, 382 U.S. 840, 86 S.Ct. 36, 15 L.Ed.2d 82 (1965), and Phillips has participated in a substantial portion of it. His *pro se* record of conduct is subject to severe criticism which cannot be justified by his claim of successful results involving several hundred thousand dollars in attorney's fees. This appears from Judge Kaufman's rebuke of Phillips in *Ackert v. Bryan*, Dkt. No. 27240 (2d Cir., June 21, 1963), where, in a separate opinion, he stated:

> "The movant, Randolph Phillips, seeks to intervene in a litigation terminated a year and a half ago and also to undo this Court's mandate in that closed litigation on the theory that our judgment was tainted by the fraud of the parties before the Court. He hurls thoroughly unsubstantiated charges at reputable counsel, contending that they fraudulently and corruptly entered into a settlement agreement in a companion case in the New York courts which, had this been known to our Court, would have necessitated our reaching a different conclusion . . . . I am not so much concerned with Mr. Phillips' indignation at what he believes to be improper behavior on the part of counsel. What does concern me is his cavalier and outrageous use of the federal courts—and indeed other forums—for his unrestrained attacks upon the personal veracity and professional competence of counsel. . . .. He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel. But this should not shield him from rebuke when merited. He is an intelligent, able and sophisticated litigant, who is no stranger to this Court, having appeared frequently in his own behalf both in the District Court and the Court of Appeals.

justification for permitting the corporation or the other shareholders to be subjected, involuntarily, to the risks of this plaintiff's transgressions, distractions and deficiencies

> We would expect that one possessed of his background would be conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits. Moreover, we are not to be manipulated by resourceful but meritless moves in a long-closed litigation, moves which serve only to distract us from important judicial business. This is particularly true when it is noted that Mr. Phillips has not seen fit to raise his voice in the state-court hearing on the propriety of the settlement which he now asks us, in this rather bizarre proceeding, to brand as fraudulently procured."

Judge Frankel did not hesitate to confirm Judge Kaufman's sentiments concerning Phillips in *Phillips v. Alleghany Corp. and Investors Diversified Services, Inc.*, Dkt. No. 72 Civ. 1544 (S.D.N.Y., June 15, 1972), in which the district court vacated a default judgment which Phillips had obtained against Alleghany, and stated:

> "The ensuing proceedings, for what should have been routine correction of a situation that should never have existed in the first place, have been prolonged and exasperating beyond any due measure. And the main causes of the unpleasantnesses have been the tenacious bellicosity and abusiveness of the plaintiff. . . . [P]laintiff has not stinted in heaping insult upon opposing counsel; he has filed voluminous and gratuitous attacks upon various state and federal judges; he has festooned his papers with baseless and essentially irrelevant charges of fraud, including 'fraud upon this court,' malice, 'hidden motives,' and, to end with one of his gentler notes, the 'obvious ignorance' of counsel for defendant. He has urged, preposterously, that counsel for defendant be 'fined' and 'censured.'
>     . . . From Mr. Phillips, then, the course of invective and relentless imposition upon counsel and the court is both more grievous in its impact and less excusable than it might be from people lacking his competence. Whatever visions 'pro se' commonly inspire, we deal here with a citizen who can hold his own with the members of our bar. He should be held to standards of decency and propriety at least approximating those applicable to others."

On July 3, 1972, upon Phillips' motion for reargument of the above decision predicated upon his allegations of bias, Judge Frankel observed:

> "Having joined the roster of judges and others charged with fraud by this plaintiff, I have duly considered the assertion that I should heretofore have recused myself from this case or should do so now. I conclude

as their advocate. They and the courts are entitled to the protections afforded to those represented by members of the bar. *See* Rule 5 of the General Rules of the United

> that the performance of my duties required, and continue to require, handling of this matter in the normal course of the court's business.
>     Defendant's papers sufficiently refute, I think, the atrocious conclusions plaintiff would draw from my involvement 15 years or so ago as an associate in the law firm of which I later became a member. If facts like these could be disqualifying—or could be deemed by any rational person to create appearances of impropriety—the judges of this court would spend much of their time reviewing their work lives and handing over to each other such routine chores as the motion in the instant case."

In *Glicken v. Bradford*, 35 F.R.D. 144, 158–59 (S.D.N.Y.1964), Chief Judge Ryan stated of Phillips, acting *pro se*, and his mother-in-law, represented by counsel, that:

> "Objectants' [Phillips and his mother-in-law] bold assertion that the settlement here compares unfavorably with a settlement negotiated by present counsel . . . is incredible, in view of the fact that one of the objections raised by these very objectants to the settlement of that suit was that it was not as favorable as the settlement under consideration! If such an inconsistent and irresponsible position were just an isolated instance it might be shrugged off as stemming from ignorance on the part of one not trained in the law, but it is not so isolated; it is one of the many fallacious arguments (at times accompanied by unwarranted and unjustified personal remarks directed to counsel by objectant Phillips) with which objectants have sought 'to distract us from important judicial business.' Unfortunately, the consideration of the objections raised here, although we have found them to be totally worthless, have taken up a great deal of the time of the Court and delayed its determination. This was not fair to anyone, including the shareholders."

The instant record also is not devoid of blameless conduct by Phillips. Contrary to the rules of this court, Second Circuit Rules § 28 (1976), his brief is neither logically arranged nor free of irrelevancies or immaterial matters. In an attempt at raising himself by denigrating others, Phillips has included in his brief another attack upon the legal profession in general. Such a brief simply demonstrates plaintiff's inability to meet the requirements, in this context, of R. 23.1 which states that the plaintiff "fairly and adequately represent the interests of the shareholders . . . similarly situated in enforcing the right of the corporation." *See* note 1, *supra*.

 

States District Court for the Southern District of New York (1974); Code of Professional Responsibility, Canons 5, 6 & 9 (1970).

We conclude that the lower court erred in permitting Phillips to prosecute this suit *pro se*, and accordingly, its order denying the motion to dismiss is reversed. Upon this appeal we do not purport to consider the adequacy or qualifications of Phillips as a shareholder to represent other shareholders similarly situated as required by Rule 23.1. However, if Phillips decides to proceed with this suit he may do so only if represented by a member of the bar. We believe that the protection of other shareholders similarly situated requires that such counsel be more than the alter ego or "co-counsel" of this particular plaintiff,[8] but be an attorney-at-law who, in accordance with the standards of *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968), is approved by the court as "qualified, experienced and generally able to conduct the proposed litigation."[9]

It is a familiar principle that in the conduct of a derivative stockholder's action the district court has inherent power in equity to determine the course of its proceedings and determine what notice is appropriate or necessary to be given to shareholders concerning any matter involving the protection of their interest.[10] Rule 23.1, in applying this concept, is specific in requiring notice to shareholders to effectuate any settlement or dismissal of the cause of action. Such notice protects nonparty stockholders against prejudice from a discontinuance or dismissal of a derivative suit particularly when the statute of limitations precludes institution of a new suit. *Cf. American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In this case the plaintiff claims that his timely institution of this action eliminated the potential defense of the statute of limitations. Consequently, in the event that the plaintiff either refuses to obtain independent counsel satisfactory to the district court or decides not to proceed with the action, the district court is instructed to dismiss the complaint after whatever notice to the other shareholders the court deems appropriate and the failure of any other shareholder to proceed with the action.

Reversed and remanded in accordance with this opinion.

---

**8.** In *Willheim v. Murchison, supra,* 206 F.Supp. at 735, Judge Dawson noted that though Phillips' mother-in-law who was his co-plaintiff was represented by counsel, Phillips bore the laboring oar in conducting the litigation and the attorney's participation was nominal. In *Phillips v. Bradford,* 228 F.Supp. 397 (S.D.N.Y. 1964), Phillips brought a *pro se* derivative suit which was dismissed since the case had already been settled in state court. Chief Judge Ryan stated that Phillips' mother-in-law appeared at the state court settlement hearing and "plaintiff [Phillips] had been acting as 'attorney in fact'" though she was also represented by counsel. *Id.* at 398.

**9.** This does not leave open an opportunity to the plaintiff to participate in the court proceedings as an attorney in fact.

**10.** *See* Advisory Committee's Note to Rule 23.-1, *supra.*