**UNITED STATES ex rel. Tod N. ROCKEFELLER, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC CO., Waste Isolation Division, a division of CBS Corp., and George Dials, individually, Defendants.**

**Civil Action No. 00–1352 (RBW).**

United States District Court, District of Columbia.

June 23, 2003.

Tod N. Rockefeller, Carlsbad, NM, pro se.

Brad Fagg, Morgan, Lewis & Bockius, L.L.P., Lydia K. Griggsby, Washington, ·DC, for defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon defendant Westinghouse Electric Company's ("Westinghouse") Motion to Dismiss the plaintiff's complaint that alleges: (1) the defendants knowingly submitted or caused to submit false or fraudulent claims for payment or approval to the United States Government in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) (2000); (2) the defendants knowingly made, used, or caused to make or use false records or statements to get a false or fraudulent claim paid or approved by the United States Government in violation of the FCA, 31 U.S.C. § 3729(a)(2); and District of Columbia common law claims of (3) fraud; (4) payment by mistake; and (5) unjust enrichment.[1] Complaint ("Compl.") at 3. Specifically, Westinghouse seeks dismissal of the plaintiff's claims under the FCA asserting that a

---

**1.** The Court notes that defendant George Dials has never been properly served in this case. The Court set aside an erroneously granted default against him on March 12, 2003, because the Court concluded that the plaintiff failed to properly serve defendant Dials under either federal law, District of Columbia law, or Nevada law. *See* March 12, 2003 Order. Following the Court's Order vacating the default because of improper service, the plaintiff filed an affidavit on April 3, 2003, claiming that he had properly effected service on defendant Dials through his attorney. However, for essentially the same reasons already expressed by the Court in its previous Order, and because defendant Dials' attorney is not a proper agent for service of process, the plaintiff has failed to effect proper service of process on defendant Dials under Federal Rule of Civil Procedure 4(e)(2). In an April 4, 2003 letter, defendant Dials' attorney, Michael Dyson, informed the plaintiff that neither he nor his law firm were authorized to accept service of process on behalf of Mr. Dials and therefore such an attempt to effectuate service on Mr. Dials was invalid.

relator[2] in a *qui tam* FCA action cannot proceed *pro se*,[3] Motion to Dismiss by the Westinghouse Defendant, Statement of Points and Authorities in Support of Motion by the Westinghouse Defendant to Dismiss ("Def.'s Stat. of P. & A.") at 10–13, which the plaintiff concedes is correct, Plaintiff's Memorandum in Opposition to Motion by the Westinghouse Defendant to Dismiss ("Pl.'s Opp'n") at 3; Plaintiff's Motion for Enlargement of Time and Statement of Points and Authorities ("Pl.'s Mot. for Enl.") at 2. In addition, the defendant asserts that the plaintiff has failed to state a claim upon which relief can be granted because the plaintiff fails to allege that the defendant submitted any claims to the United States Government or that such claims, if submitted, were false. Def.'s Stat. of P. & A. at 14–16. The defendant further contends that the plaintiff's allegations fail to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud claims, such as those under the FCA, to be pled with particularity, *id.* at 17–18. Finally, with respect to the plaintiff's common law claims, the defendant asserts that the plaintiff lacks standing to pursue these claims on behalf of the United States.[4] *Id.* at 21. Upon consideration of the parties' submissions and for the reasons set forth below, the Court must grant defendant Westinghouse's motion to dismiss plaintiff Rockefeller's FCA and common law claims, because a relator in a *qui tam* FCA action cannot proceed *pro se* and the plaintiff lacks standing to pursue common law claims for injuries allegedly sustained by the United States.

## I. *Background*

From 1992 until 1997, defendant Westinghouse contracted to operate the United States Department of Energy's ("DOE") Waste Isolation Pilot Plant nuclear repository ("WIPP") in New Mexico. Compl. at 2. The DOE employed the plaintiff from 1993 to 1997 as an environmental scientist at the WIPP. *Id.* at 3. The plaintiff alleges that the defendant made several false claims during the course of Westinghouse's contractual relationship with the DOE. *Id.* at 4–7. The plaintiff alleges that the defendant routinely made false claims of operational costs, including overcharges for both waste disposal and recycling in fiscal year 1995. *Id.* at 4. The plaintiff also contends that the defendant violated the FCA by continuing to use an "antiquated manual gas canister based V[olatile] O[rganic] C[ompound] monitoring" system instead of the more cost effective Fourier Transform Infrared monitoring system, which would have saved the taxpayers ap-

2. A relator is a private person suing on behalf of the United States and his or herself in a *qui tam* FCA action. *"Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur.* Th[e] English translation of this phrase means he 'who pursues this action on our Lord the King's behalf as well as his own.' There are three other *qui tam* statutes that remain in the United States Code: 25 U.S.C. § 81 (cause of action and share of recovery against a person contracting with Indians in an unlawful manner); 25 U.S.C. § 201 (cause of action and share of recovery against a person violating Indian protection laws); 35 U.S.C. § 292(b) (cause of action and share of recovery against a person falsely marking patented articles)."

*Shekoyan v. Sibley Intern. Corp.*, 217 F.Supp.2d 59, 71 n. 11 (D.D.C.2002) (Walton, J.) (internal citation omitted) (citing *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 n. 1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)).

3. The Court notes that the terms *pro se* and *pro persona* (*pro per*) are analogous. *See* Black's Law Dictionary (7th Ed.1999).

4. The plaintiff's fraud, payment by mistake, and unjust enrichment claims are collectively referred to in this opinion as the "common law claims."

proximately two million dollars per year. *Id.* at 5. The plaintiff bases his common law claims on the above false claims that were allegedly made by the defendant to the United States. *Id.* at 9–10.

Following the filing of the plaintiff's complaint, this Court gave the United States an opportunity to intervene in this case pursuant to section 3730(b)(2) of the FCA, 31 U.S.C. § 3730(b)(2) (2000), which the United States subsequently declined, The United States' Notice of Election to Decline Intervention at 1. As the Court mentioned above, the defendant subsequently moved to dismiss the case, asserting that a relator in a *qui tam* FCA action cannot proceed *pro se.* Def.'s Stat. of P. & A. at 10–13. The plaintiff, in his response to the defendant's motion, conceded that he cannot proceed *pro se* in this case and requested sixty days to obtain the representation of an attorney. Pl's Opp'n at 3; Pl.'s Mot. for Enl. at 2. On January 24, 2003, after failing to obtain counsel at the end of the sixty-day period, the plaintiff requested another ninety days to obtain counsel, Plaintiff's Motion for Partial Judgment as a Matter of Law at 11, which this Court granted *nunc pro tunc* to January 24, 2003, *see* May 27, 2003 Order. The plaintiff has still not retained the services of an attorney.

Against this background, the Court will address whether the plaintiff has standing to bring the common law claims and, because the plaintiff has been unable to obtain counsel to represent him in this matter, the Court will also review whether the plaintiff can proceed *pro se* with the *qui tam* FCA claims he has filed.

## II.  *Analysis*

### (A)  *Plaintiff's Common Law Claims*

■   At the outset, this Court must address the fact that the plaintiff has failed to respond to the defendant's assertion that the plaintiff lacks standing to bring the common law claims.[5]  This Court's Local Rule 7.1(b) states:

> Within 11 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion.  If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

"It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 238 F.Supp.2d 174, 178 (D.D.C.2002) (Walton, J.) (citations omitted).  "The District of Columbia Circuit has stated that 'the discretion to enforce ... [R]ule [7.1(b)] lies wholly with the district court', and noted that the Circuit 'ha[s] yet to find that a district court's enforcement of this rule constituted an abuse of discretion' ..." *Id.* at 178 (internal citations omitted) (alteration in original).  This Court has an obligation, however, to independently ensure proper subject matter jurisdiction in a case. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that standing is an indispensable part of the plaintiff's case for establishing

---

5.  The Court notes that it issued an Order granting the plaintiff an opportunity to respond to the defendant's assertion that he lacks standing to assert the common law claims. *See* June 9, 2003 Order. Specifically, the plaintiff has failed to address the following claims that the defendant has moved to dismiss:  Count III (common law fraud); Count IV (Payment by Mistake);  Count V (Unjust Enrichment).  The plaintiff failed to respond to the Court's order.

"federal jurisdiction"); *Floyd v. District of Columbia*, 129 F.3d 152, 155 (D.C.Cir. 1997) ("[The court has] an independent obligation to assure [itself] of jurisdiction. . . .").

██ Defendant Westinghouse seeks dismissal of the plaintiff's common law claims under Federal Rule of Civil Procedure 12(b)(1), which requires that the plaintiff bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F.Supp.2d 15, 18 (D.D.C.1998); *Darden v. United States*, 18 Cl.Ct. 855, 859 (Cl.Ct.1989). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), because the plaintiff has the burden of proof to establish jurisdiction, the " 'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F.Supp.2d at 13–14 (citation omitted). However, in deciding a 12(b)(1) motion, the Court is not limited to the allegations in the complaint but may consider " 'such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case.' " *Id.* at 14 (citations omitted).

██ A relator in a *qui tam* FCA action does not have standing to assert common law claims based upon injury sustained by the United States. *See United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443, 451–52 (S.D.N.Y.2001) (holding that a relator lacks standing to bring common law claims of fraud, mistake of fact, and unjust enrichment); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.Supp.2d 141, 149 (D.Mass.2000) (holding that a relator lacks standing to bring common law claims of fraud, payment under mistake of fact, and unjust enrichment); *United States ex rel. Long v. SCS Bus. & Tech. Inst.*, 999 F.Supp. 78, 92 (D.D.C.1998) (holding that relator lacks standing to bring common law unjust enrichment claim), *rev'd on other grounds*, 173 F.3d 870 (D.C.Cir.1999). *See generally Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (holding that a plaintiff must suffer an injury in fact in order to satisfy one of the three elements for the "constitutional minimum of standing. . . ."). Therefore, the Court lacks subject matter jurisdiction over the plaintiff's common law claims and must dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(1).

**(B)** *Plaintiff's FCA Claims*

The plaintiff concedes that he cannot proceed with his *qui tam* FCA claims without the representation of an attorney. *See* Pl's Opp'n at 3 ("Rockefeller concedes to the claim of [Westinghouse] that he can not represent the United States on a *pro per* basis.") (emphasis added); Pl.'s Mot. for Enl. at 2 ("Once, however, that Rockefeller evaluated this issue presented by [Westinghouse], he agrees with the ruling in *United States ex rel. Schwartz v. TRW, Inc.*, 118 F.Supp.2d 991 (C.D.Cal.2000) that a *pro se* litigant can not represent the United States concerning a FCA lawsuit.") (emphasis added). Despite this concession, considering the scarceness of decisions on the issue, this Court will indepen-

dently inquire into the subject.[6] *See Williams v. Carter*, 10 F.3d 563, 567 (8th Cir.1993) ("Pleadings and other documents filed by *pro se* litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding.").

In 1863, during the Civil War, Congress enacted the FCA to "broadly ... protect the funds and property of the Government from fraudulent claims...." *Rainwater v. United States*, 356 U.S. 590, 592, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958). The FCA allows the United States to recover against "[a]ny person who knowingly presents, or causes to be presented, to ... the United States Government ... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). A FCA action may be brought by the United States or by a relator on behalf of the United States in a *qui tam* civil action. 31 U.S.C. § 3730(b)(1); *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). If a relator brings the action, the relator must serve the United States with a copy of the complaint and any supporting information, and allow sixty days for the United States to intervene in the action. 31 U.S.C. § 3730(b)(2). If the United States chooses to intervene, the United States has the primary responsibility for prosecuting the action and the relator can continue as a participant in the case. 31 U.S.C. § 3730(c)(1). If the United States chooses not to intervene, the relator "shall have the right to conduct the action," subject to subsequent intervention by the United States, which a court may

permit for good cause. 31 U.S.C. § 3730(c)(3). If the United States intervenes and is successful, the relator receives fifteen to twenty-five percent of the judgment, 31 U.S.C. § 3730(d)(1), and if the United States does not intervene and the relator is successful, the relator receives twenty-five to thirty percent of the judgment, 31 U.S.C. § 3730(d)(2).

### 1. *Lay Person Representation in General*

Generally, a lay person cannot represent a party in court. *See* 28 U.S.C. § 1654 (2000) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."); *Georgiades v. Martin–Trigona*, 729 F.2d 831, 834 (D.C.Cir.1984) (holding that a lay person cannot appear as counsel for others); *Collins v. O'Brien*, 208 F.2d 44, 45 (D.C.Cir.1953) *(per curiam )* (same). In *Georgiades*, the District of Columbia Circuit held that a son, who was not a member of any bar, could not represent his mother in court. 729 F.2d at 834. Similarly, in *Collins*, the Circuit Court held that a lay person's ability to appear *pro se* is "reserved to the individual." 208 F.2d at 45. In addition, other courts have held that a lay person cannot represent stockholders in a stockholder derivative suit or the class in a class action law suit, even if the lay person is one of the stockholders or class members. *See, e.g., Phillips v. Tobin*, 548 F.2d 408, 411 (2d Cir.1976) (holding that a stockholder cannot represent the corporation without an attorney); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) (holding that a qualified

---

**6.** This Court has only been able to identify three cases that have examined in any detail whether a *pro se* relator can represent the United States in a *qui tam* FCA action. *See United States v. Onan*, 190 F.2d 1 (8th Cir. 1951), *cert. denied*, 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654 (1951); *United States ex rel. Schwartz v. TRW Inc.*, 118 F.Supp.2d 991, 994 (C.D.Cal.2000); *United States ex rel. Tyler v. California*, Case No. S–98–2130, 1999 WL 33456979 (E.D.Cal. Sept. 24, 1999).

counsel is needed to adequately represent the interest of the class). In *Phillips*, the Second Circuit held that in a stockholder derivative suit, the interest being represented was that of the corporation, even though the stockholder had some interest in the suit, and thus prohibited the stockholder from representing the corporation. 548 F.2d at 411; *see also Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) ("[The corporation] is the real party in interest, the stockholder being at best the nominal plaintiff."). And, a class member cannot represent the class without counsel, because a class action suit affects the rights of the other members of the class. *See Oxendine*, 509 F.2d at 1407. Thus, in *Rowland v. California Men's Colony*, 506 U.S. 194, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993), the Supreme Court observed that "the lower courts have uniformly held that 28 U.S.C. § 1654 ... does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel." *Id.* at 202, 113 S.Ct. 716.

■ The relator in a *qui tam* FCA action, while having a stake in the lawsuit, represents the interests of the United States. *United States v. Onan*, 190 F.2d 1, 4, 6, (8th Cir.1951) (holding that a lay person cannot represent the United States in a FCA action). While in a *qui tam* FCA action the relator has the "right to conduct the action," 31 U.S.C. § 3730(c)(3), the United States remains "the real party in interest" whether it intervenes or not, *United States ex rel. Zissler v. Regents of Univ. of Minn.*, 154 F.3d 870, 872 (8th Cir.1998) ("Even in cases where the United States has declined to intervene, the structure of the *qui tam* procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation have been held to weigh heavily

for holding that it remains the real party in interest.") (internal quotations and citations omitted). Because a relator represents the United States in a *qui tam* FCA action, this Court must conclude that under 28 U.S.C. § 1654 the plaintiff is not qualified as a lay person to represent the interests of the United States in court proceedings.

The similarity between the status of relators in *qui tam* actions and that of stockholders and class representatives supports the Court's conclusion. Like a stockholder in a stockholder derivative suit and a class member in a class action suit, a lay relator in a FCA action needs qualified legal counsel to ensure that the real party at interest, the United States, is adequately represented. The need for adequate legal representation on behalf of the United States is obviously essential. As another district court noted in considering this issue: "[a]ny determination in this case would likely be given res judicata and collateral estoppel effect against future cases." *United States ex rel. Schwartz*, 118 F.Supp.2d at 996. Because the United States is the real party in interest, a judgment obtained by a relator may adversely affect the United States' right to "bring future actions on the same claims asserted here, even if [the United States] obtained new evidence." *Id.* Considering what is at stake for the United States when a relator brings a *qui tam* action, representation by a lay person is inadequate to protect the interest of the United States. *See id.* In this regard, courts that have considered this issue have also focused on the fact that non-lawyers are not subject to the same ethical considerations that govern the conduct of attorneys and lack the necessary skills to prosecute complicated FCA claims. *Id.* at 995. Therefore, this Court concludes that a *pro se* plaintiff, absent explicit statutory authorization, is

unable to represent the interests of the United States in a *qui tam* action.[7]

## 2. *Statutory Authorization for Pro Se Representation*

28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Thus, lay persons have a statutory right to represent themselves in cases that are brought in this Court. However, an exhaustive search of the United States Code has failed to reveal any statutory authority for lay representation of another person or a non-person entity in federal court proceedings. *See Rowland,* 506 U.S. at 202, 113 S.Ct. 716. As one Circuit Court noted, "[t]he federal courts have consistently rejected attempts at third-party lay representation." *Herrera–Venegas v. Sanchez–Rivera,* 681 F.2d 41, 42 (1st Cir.1982).

The Court's research has revealed only one subject area where Congress has expressly authorized third-party representation in a federal proceeding by a lay person. *See* 42 U.S.C. § 406(a)(1) (2000) (authorizing the Commissioner of Social Security to recognize "agents or other persons, other than attorneys ... [to] represent[ ] claimants before the Commissioner of Social Security ..."). And in this one subject area, some courts have allowed non-attorney parents to represent their minor child in a federal court to challenge the Commissioner of Social Security's decision to deny supplemental security income ("SSI") benefits to their minor child. *See, e.g., Machadio v. Apfel,* 276 F.3d 103, 107 (2d Cir.2002); *Harris*

*v. Apfel,* 209 F.3d 413, 417 (5th Cir.2000). The *Harris* Court discussed several reasons for allowing non-attorney parents to represent their minor child in a SSI appeal: (1) a minor child in a family applying for SSI benefits usually cannot afford to hire an attorney; (2) the court independently reviews all the facts in a SSI appeal, thereby sufficiently protecting the minor child's interest; (3) SSI appeals are not subject to abuse of frivolous claims; and (4) the SSI payments to a minor child are paid to the parent or guardian. *See Harris,* 209 F.3d at 416. Moreover, the Second and Fifth Circuits relied upon the fact that in the context of a SSI appeal, the interest of the minor child plaintiff and the parents are essentially the same, *Machadio,* 276 F.3d at 107; *Harris,* 209 F.3d at 416, as the Second Circuit commented that the parents of the minor child's "interest is squarely at stake" in a SSI appeal, *Machadio,* 276 F.3d at 107. These unique reasons for allowing non-attorney parents to represent their minor children in SSI appeals do not extend to relators in a FCA case. In addition, as this Court has already explained, the United States remains the "real party in interest" in a FCA action. *United States ex rel. Zissler,* 154 F.3d at 872. Furthermore, while the Fifth Circuit found that a minor child's interest is adequately protected by a court's independent review of all of the facts in a SSI appeal, in the FCA context a lay person relator lacks the ability to adequately protect the interests of the United States. *See United States ex rel. Schwartz,* 118 F.Supp.2d at 995 ("[T]he [*pro se* relator's] lack of skill is also an issue of concern in cases as complicated as *qui tam* actions.") (emphasis added).

---

7. Even if the United States desired to permit the plaintiff to represent its interest in court by declining to intervene in the FCA action, it is quite dubious whether the government could do so. *See Georgiades,* 729 F.2d at 834 (holding that a mother cannot choose to have her non-attorney son represent her in court).

Therefore, this Court must conclude that third party lay representation is not permissible in the FCA context, because the FCA does not specifically authorize it and there are no policy reasons for creating an exception to the general proscription against third party lay representation.

### 3. *Partial Assignment of the Damage Claim*

■■■ Having concluded that the plaintiff is unable to proceed *pro se* on behalf of the government on the FCA claims, the Court must now examine whether the plaintiff can bifurcate his claims from the government's claims and proceed *pro se* solely on his claims. It is well understood that the FCA partially assigns the United States' damage claims to a relator. *See Vt. Agency of Natural Res.*, 529 U.S. at 773, 774 n. 4. Generally, a partial assignment gives the assignee the rights to the part of the claim that is assigned, as if the part assigned is a separate right. *See* Restatement (Second) of Contract § 326 (1981). Accordingly, a partial assignee can generally sue to recover his or her part of the claim. *See* Restatement (Second) of Contract § 326 cmt. b.[8]

■■ Despite the manner in which partial assignments are generally construed, in the context of the FCA, the partial assignment to a relator is conditioned on the United States receiving at least seventy percent of any recovery obtained from the FCA violator. 31 U.S.C. § 3730(d)(2). The purpose of the *qui tam* provision of the FCA is to enlist the help of private citizens in recovering government funds lost by fraud. *See* S.Rep. No. 99–345, at 2

(1986). Although a relator in such suits, regardless of whether the United States intervenes, receives some portion of the judgment, such reward is merely an incentive to encourage more people to bring meritorious FCA claims in order to increase the rate of recovery by the United States. *Id.* ("[The 1986 amendment to the FCA] increases incentives, financial and otherwise, for private individuals to bring suits on behalf of the Government."). The United States is always entitled in a FCA action to receive a portion of any funds that are recovered. 31 U.S.C. § 3730(d)(1)-(2). The idea that a relator can independently pursue what would amount to his or her personal part of a FCA lawsuit without affecting the United States' rights in the action is wholly inconsistent with the purpose behind the FCA. *See id.* at 1 ("The purpose of [the 1986 amendment] is to *enhance the Government's ability to recover losses sustained as a result of fraud* against the Government.") (emphasis added). An FCA claim remains the interest of the United States, even if it chooses not to intervene in an action brought by a relator. *See* 31 U.S.C. § 3730(d)(2). Thus, the interest of the United States is always at risk in a FCA case, regardless of whether it chooses to intervene or not. 31 U.S.C. § 3730(b)(1) ("A person may bring a[FCA] action ... for the person *and for the United States Government. The action shall be brought in the name of the Government* ....") (emphasis added). In light of the purposes underlying the enactment of the FCA and the 1986 amendment thereof,

---

**8.** Based upon this reasoning, the court in *United States ex rel. Trice*, No. CS–96–0171–WFN, 2000 U.S. Dist. Lexis 8838 (E.D.Wa. 2000), allowed a relator to proceed *pro se*. While this Court would agree with the *Trice* Court that the assignment, be it partial or complete, creates sufficient standing for the *pro se* plaintiff to sue, *id.*, this Court is unable to agree with the *Trice* Court's conclusion that a *pro se* relator can represent the United States in a court action, even when there is a partial assignment, for the reasons expressed above.

and the language of the statute itself, this Court concludes that the plaintiff is unable to bifurcate an FCA claim so as to permit him as a relator to pursue his own independent claim that is totally separate from the United States' interest in that claim.

## III. *Conclusion*

For the reasons set forth above, the Court must grant the defendant's motion to dismiss the plaintiff's FCA claims pursuant to 28 U.S.C. § 1654 because, as the plaintiff concedes, a *pro se* party cannot represent the interests of the United States. In addition, the plaintiff lacks standing to bring his common law claims because an individual is unable to sue for injuries suffered by the United States and therefore these claims will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). However, pursuant to a previous order entered in this case, the Court will not dismiss this case until written consent to do so is received from the United States. May 29, 2001 Order; *see* 31 U.S.C. § 3730(b)(1). While the Court finds that dismissal of this case is appropriate, upon receipt of the written consent from the government, the Court will dismiss the FCA claims without prejudice so that the United States, or the plaintiff with an attorney, may pursue this action in the future. *See United States ex rel. Schwartz*, 118 F.Supp.2d at 996 (dismissing case without prejudice in order to al-low the plaintiff to seek representation by counsel). However, should the United States desire to intervene[9] instead of consenting to the dismissal, the Court will consider the other grounds asserted in the defendant's motion to dismiss.[10] In any event, the plaintiff's common law claims are dismissed with prejudice.[11]

## *ORDER*

Upon consideration of the defendant's motion to dismiss this case, the plaintiff's concession that he is unable to prosecute a claim under the False Claims Act ("FCA") in a *pro se* capacity, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby

**ORDERED** that the United States of America shall be given the opportunity to either file a written consent to the dismissal without prejudice of the FCA claims pursuant to 28 U.S.C. § 1654 or move to intervene in this action by June 30, 2003. It is

**FURTHER ORDERED** that the plaintiff's common law claims of fraud, payment by mistake, and unjust enrichment are **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

**9.** When the United States seeks to intervene in a FCA action initiated by a relator during the course of the litigation, after having declined to do so within the initial sixty-day deadline after receiving the complaint and the other statutorily required documentation, the United States must make a showing of good cause to enter the case. 31 U.S.C. § 3730(b)(2), (c)(3). However, in this situation, in which the case is going to be dismissed because the lay relator has not retained an attorney to assist in the prosecution of the action, it is unclear whether the United States must still make a good cause showing to intervene in the case. If the government

moves to intervene in this case, the Court will address this issue at that time.

**10.** Defendant Westinghouse also seeks to dismiss the plaintiff's FCA claims on the grounds that: (1) the plaintiff has failed to allege fraud with particularity; (2) the plaintiff's FCA claims are based on prior public disclosure; and (3) the government knew about the alleged false claims.

**11.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.